IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez

Civil Action No. 1:25-cv-00051-RMR

SARAH NATHREEN ,

    Plaintiff,

v.

DENVER HOUSING AUTHORITY

    Defendant,

and

HOLLAND RESIDENTIAL, LLC,

    Nominal Defendant.

## ORDER

This matter comes before the Court on Plaintiff's Emergency Motion for Temporary Restraining Order and Injunctive Relief, ECF No. 3. For the reasons explained below, the motion is DENIED.

### I. BACKGROUND

Plaintiff, proceeding *pro se*,[1] moves for an "Emergency Temporary Restraining Order (TRO) and Preliminary Injunction against the Denver Housing Authority ("DHA") to

---

[1] The Court must construe Plaintiff's motion liberally because he is a *pro se* litigant. *See Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). However, the Court should not act as a *pro se* litigant's advocate. *Hall*, 935 F.2d at 1110.

halt an impending eviction by Holland Residential, LLC (hereinafter "Sabine Apartments") and to compel DHA to fulfill its obligations under the Housing Choice Voucher Program (Section 8) pursuant to Federal Rule of Civil Procedure 65(b)." ECF No. 3 at 1. Plaintiff asserts various claims against the Denver Housing Authority ("DHA"), alleging DHA has failed to pay her landlord the agreed upon rent pursuant to a Section 8 housing voucher. ECF No. 1 at 6-7. Plaintiff alleges that as a result of DHA's failure to pay, she faces impending homelessness due to the eviction proceedings initiated by Sabine Apartments. *Id.* at 7.

> A description of the Section 8 housing voucher program follows:
>
> The Section 8 Housing Choice Voucher Program provides rental assistance to low-income families to enable them to participate in the private rental market. This program is administered by [the Department of Housing and Urban Development ("HUD") ]. 42 U.S.C. § 1437f(o); 24 C.F.R. pt. 982. Although funded by the federal government, it is generally administered by state or local government entities known as public housing agencies ("PHA"). 24 C.F.R. § 982.1(a). A PHA must comply with HUD regulations and other HUD requirements for the program. 24 C.F.R. § 982.52(a). Federal regulations require PHAs to adopt written administrative plans that establish local policies for administration of the program in accordance with HUD requirements. 24 C.F.R. § 982.54.
>
> [The DHA] is the local PHA that administers the Section 8 program for [Denver, Colorado].
>
> Eligibility for the Section 8 housing voucher is determined by income. 24 C.F.R. § 982.201. Qualified participants pay a percentage of their income toward rent and utilities and receive subsidies for the balance of the rental payment. 42 U.S.C. § 1437f....The subsidized portion of the rent is paid by the PHA to the rental property owner (the "person...with the legal right to lease...a unit to a participant" under the program, 24 C.F.R. § 982.4) pursuant to [a Housing Assistance Payment ("HAP") ] contract. Once a PHA determines that a participant is eligible and that there is available space in the program, the PHA issues the participant a voucher and the participant can search for housing. 24 C.F.R. §§ 982.202, 982.302.

> If a property owner agrees to lease a unit to a tenant under the program, he must enter into an HAP contract with the PHA.
>
> The HAP contract is prescribed by HUD and specifies the maximum monthly rent an owner may charge. 42 U.S.C. § 1437f(c)(1). Before the PHA enters into an HAP contract, the PHA must determine that the cost of the unit is reasonable and meets HUD's prescribed housing quality standards (HQS). 42 U.S.C. § 1437f(o)(8); 24 C.F.R. § 982.305(a); 24 C.F.R. § 982.401. The HAP contract provides that it "shall be interpreted and implemented in accordance with HUD requirements, including the HUD program regulations at 24 Code of Federal Regulations Part 982." HUD-52641, Part B (3/2000), ¶ 16(b). The Section 8 participant enters into a separate lease with the owner that must meet certain requirements pursuant to 42 U.S.C. § 1437f(o)(7). For example, the lease must include the required tenancy addendum. 24 C.F.R. § 982.305(a). The housing must also be inspected annually to ensure that it continues to meet the HQS. 42 U.S.C. § 1437f(o)(8)(B)-(D). Tenants must also re-certify family income and composition annually to continue in the program. 24 C.F.R. § 982.516.

*Thompson v. Boulder Cnty. Hous. Auth.*, No. 16-CV-00361-GPG, 2016 WL 852893, at *1–2 (D. Colo. Mar. 4, 2016) (citing *Khan v. Bland*, 630 F.3d 519, 523-24 (7th Cir. 2010)).

Based on the alleged failure of DHA to pay Plaintiff's rent pursuant to the Section 8 housing voucher, Plaintiff asserts eight claims for relief: (1) breach of contract; (2) fraudulent inducement; (3) Violation of the Fair Housing Act; (4) Violation of Title VI of the Civil Rights Act; (5) Violations of the Fourteenth Amendment's Procedural Due Process and Equal Protection Clauses; (6) Violations of the Spending Clause; (7) Intentional and negligent infliction of emotional distress; and (8) Violations of Section 1981 and Section 1982 of the Civil Rights Act.  ECF No. 1.

Accordingly, Plaintiff moves for an emergency TRO and asks the Court to (1) order DHA to remit payment to Plaintiff's landlord for all past-due rent owed (including interest charged) under the lease agreement; (2) enjoin DHA from failing to comply with its obligations under the Section 8 Housing Choice Voucher Program with respect to

3

Plaintiff's lease; (3) enjoin Holland Residential, LLC ("Sabine Apartments"), from proceeding with any eviction actions against Plaintiff during the pendency of this litigation; and (4) order DHA to provide Plaintiff with any documentation necessary to facilitate the porting of her Section 8 voucher back to Flagstaff, or any other jurisdiction of Plaintiff's choosing, should Plaintiff elect to pursue this option. ECF No. 3.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 65 authorizes a district court to enter preliminary injunctions and issue TROs. Fed. R. Civ. P. 65(a), (b). The decision whether to issue a TRO is committed to a district court's sound discretion. *Allen W. Hinkel Dry Goods Co. v. Wichison Indus. Gas Co.*, 64 F.2d 881, 884 (10th Cir. 1933); *see also* 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2951 (3d ed. 2023) ("The issuance of a temporary restraining order is a matter that lies within the discretion of the district court."). The procedure and standards for determining whether to issue a TRO mirror those for a preliminary injunction. *See Emmis Commc'ns Corp. v. Media Strategies*, Inc., No. CIV. A. 00-WY-2507CB, 2001 WL 111229, at *2 (D. Colo. Jan. 23, 2001) (citation omitted). "Preliminary injunctions are extraordinary remedies requiring that the movant's right to relief be clear and unequivocal." *Planned Parenthood of Kan. v. Andersen*, 882 F.3d 1205, 1223 (10th Cir. 2018).

A party seeking preliminary injunctive relief must satisfy four factors: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest. *Petrella v. Brownback*,

787 F.3d 1242, 1257 (10th Cir. 2015). A party seeking an injunction must demonstrate that "all four of the equitable factors weigh in its favor," *Sierra Club, Inc. v. Bostick*, 539 F. App'x 885, 888 (10th Cir. 2013), and a "plaintiff's failure to prove any one of the four preliminary injunction factors renders its request for injunctive relief unwarranted." *Vill. of Logan v. U.S. Dep't of Interior*, 577 F. App'x 760, 766 (10th Cir. 2014).

In addition to the four factors, a district court must also consider whether the movant's request falls within one of the "disfavored injunction" categories. Those categories of disfavored injunctions include those that will (1) alter the status quo, (2) mandate an affirmative act by the defendant, or (3) afford all the relief that the movant could expect to win at trial. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1259 (10th Cir. 2004). Here, this is a disfavored injunction because it would mandate an affirmative act by DHA.

### III.   ANALYSIS

The Court has reviewed Plaintiff's motion and complaint. While the Court may be sympathetic to the Plaintiff's plight, for the reasons stated below, the Court finds that Plaintiff has not demonstrated that her request for this extraordinary relief is warranted.

To obtain injunctive relief, Plaintiff must first show that she will suffer irreparable injury if her request for injunctive relief is denied. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). "To constitute irreparable harm, an injury must be certain, great, actual 'and not theoretical.' " *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C.Cir. 1985)). Irreparable harm is more than "merely serious or substantial" harm. *Id.* (citation omitted). The party seeking the preliminary injunction "must show that 'the injury complained of is of such

imminence that there is a clear and present need for equitable relief' to prevent irreparable harm." *Id.* (citation omitted). Therefore, to demonstrate irreparable harm, Plaintiff "must establish both that harm will occur, and that, when it does, such harm will be irreparable." *Vega v. Wiley*, 259 F.App'x 104, 106 (10th Cir. 2007).

Plaintiff alleges that she will suffer irreparable harm if her request for relief is denied because she "faces imminent eviction and homelessness, which would exacerbate her severe physical and mental conditions." ECF No. 3 at 9. Plaintiff alleges she received an eviction notice on December 14, 2024, and will be evicted by January 12, 2024. ECF No. 1 at 7-8, ECF No. 3 at 2. The Court recognizes the imminence of the eviction and the potential harm that will come if Plaintiff is left homeless. However, the Court finds that Plaintiff's delay in seeking relief undermines a finding of irreparable harm. Plaintiff alleges she entered into the lease on May 31, 2024, and that DHA has failed to pay her rent for the entirety of the lease. ECF No. 1 at 8-9. But Plaintiff waited seven months—and until her eviction was just days away—to seek relief. This undercuts a finding of irreparable harm. *See Fish v. Kobach*, 840 F.3d 710, 753 (10th Cir. 2016) (explaining that delay in seeking preliminary relief can cut against finding irreparable injury); *GTE Corp. v. Williams*, 731 F.2d 676, 679 (10th Cir. 1984) (holding that delay in seeking an injunction can be "an important factor in determining irreparable harm").

Even if the Court were to find that Plaintiff has shown irreparable harm, Plaintiff has not established that the other three factors are met. In particular, Plaintiff has not demonstrated a likelihood of success on the merits of her claims. Plaintiff relies only on conclusory allegations that fall short of establishing that the "extraordinary remedy" of a

TRO should be granted, *Bryant v. Nat'l Football League*, No. 07-cv-02186-MSK-MJW, 2007 WL 305498, at *2 (D. Colo. Oct. 18, 2007).

Plaintiff's conclusory allegations do not show a substantial likelihood of prevailing on the merits of her claims. *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1246 (10th Cir. 2001). Plaintiff's complaint contains the bare allegations that "DHA induced Plaintiff to move to Denver, Colorado, by misrepresenting its ability to manage Plaintiff's Section 8 voucher and fulfill its obligations to pay rent on Plaintiff's behalf." ECF No. 1 at 5. But Plaintiff has not pleaded that DHA made a knowing misrepresentation of a material fact, a required element of Plaintiff's fraudulent inducement claim. A promise concerning a future act can only be actionable as fraud if it is coupled with a present intention not to fulfill the promise. *Kinsey v. Preeson*, 746 P.2d 542, 551 (Colo. 1987) (citing *Stalos v. Booras*, 528 P.2d 254, 256 (Colo. 1974)). *See also Frank v. Wells Fargo Bank, N.A.*, No. 15–cv–02646–RBJ, 2016 WL 6212524, at *6 (D. Colo. Oct. 11, 2016) ("[w]here the fact allegedly misrepresented is not an existing fact, but rather, a promise to perform a particular act at a future time, the pleader must allege facts showing that, at the time of the promise, the speaker consciously harbored a present intention not to perform the promised act . . . . Under Colorado law, plaintiffs must therefore allege sufficient facts suggesting that defendant intended not to perform that promised act at the time it made that promise."). And crucially, Plaintiff's allegations and the exhibits incorporated into the Complaint do not establish that DHA was under any obligation to pay rent on her behalf. As explained above, the Section 8 housing voucher program involves a series of steps that must be taken to establish eligibility and the issuance of a

7

voucher. If a voucher is issued, the qualified participant can search for housing, and if a property owner agrees to lease to the tenant under the program, the property owner (here, Holland Residential, LLC a/k/a Sabine Apartments) must enter into a Housing Assistance Payment contract with the public housing agency (here, DHA). Several steps must then be taken to enter a lease that satisfies the requirements of 42 U.S.C. § 1437f(o)(7). Plaintiff fails to allege that any of these requirements were satisfied. At most, Plaintiff's complaint alleges her belief that she was entitled to a Section 8 housing voucher and that there was communication between herself, DHA, and Sabine Apartments discussing the same. But this, without more, does not show that the necessary steps were taken to establish DHA's obligation to pay Plaintiff's rent under her current lease. Moreover, Plaintiff fails to set forth any specific allegations that DHA's failure to pay her rent or her pending eviction is the result of discrimination on the basis of her race or discrimination. Absent any allegations that the eviction is for any reason other than Plaintiff's failure to pay rent, Plaintiff has not demonstrated a substantial likelihood of prevailing on the merits of her claims.

Additionally, Plaintiff did not satisfy the procedural requirements for obtaining an *ex parte* TRO. Rule 65(b) states that a TRO may be issued without written or oral notice to the adverse party or its attorney only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). This Court has stated that it "shall not consider an *ex parte* motion for temporary restraining order" except as provided in Fed. R. Civ. P. 65(b)(1). D.C.COLO.LCivR 65.1. Here, while Plaintiff's Complaint is verified, the Court finds under Rule 65(b)(1)(A) that Plaintiff has not "clearly shown that immediate and irreparable injury will result to her before the adverse party can be heard in opposition." *Id.* Plaintiff received the eviction notice on December 13, 2024, but did not file her motion until January 7, 2025. ECF No. 3. Plaintiff has not explained why she was unable to file her motion and notify DHA of her motion at an earlier date. The motion also does not show that Plaintiff attempted to give notice of her request for a TRO to DHA as required by Rule 65(b)(1)(B). *See Brown v. Deutsche Bank Nat'l Trust*, No. 10-cv-02287-ZLW-MJW, 2010 WL 4256212, at *2 (D. Colo. Sept. 28, 2010) (applying the requirement of Fed. R. Civ. P. 65(b)(1)(B) to a pro se plaintiff's motion for TRO); *see also Bender v. Citimortgage Inc.*, No. 12-cv-02896-WYD-KMT, 2012 WL 12873517, at *1 (D. Colo. Nov. 9, 2012). Additionally, Plaintiff failed to comply with D.C.COLO.LCivR 65.1, which states that a motion for TRO "shall be accompanied by a certificate of counsel or an unrepresented party, stating: (1) that actual notice of the time of filing the motion, and copies of all pleadings and documents filed in the action to date or to be presented to the court at the hearing, have been provided to opposing counsel and any unrepresented adverse party; or (2) the efforts made by the moving party to provide the required notice and documents." *Id.* Plaintiff has failed to comply with this rule or offer any explanation why she could not provide such notice.

## IV. CONCLUSION

Thus, for the reasons stated herein, Plaintiff's Emergency Motion for Temporary Restraining Order and Injunctive Relief, ECF No. 3, is DENIED.

DATED: January 9, 2025

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge